2023 IL App (1st) 221706-U

SIXTH DIVISION
December 8, 2023

No. 1-22-1706

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| RUTH GLEICHER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 22 L 3767 |
| | ) | |
| MARC H. PULLMAN, | ) | The Honorable |
| | ) | Michael F. Otto, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE TAILOR delivered the judgment of the court.
Justices Hyman and C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    Held:    The judgment of the circuit court dismissing the plaintiff's legal malpractice claim as time-barred is affirmed.

¶ 2                                         I. BACKGROUND

¶ 3    In this legal malpractice action filed on April 25, 2022, plaintiff Ruth Gleicher alleged that her lawyer, defendant Marc Pullman, negligently represented her in drafting her estate plan and in advising her on legal matters concerning her interest in Somerset, Inc. (Somerset), a Nevada limited liability company, which was her "sole inheritance." She alleged that but for Pullman's negligent acts, she would have received $6 million in proceeds from the sale of Somerset. Instead,

Pullman preferred the interests of her husband – who she is divorcing – over hers, and as a result her husband received the lion's share of the proceeds from the sale, leaving her next to nothing. Pullman moved to dismiss, arguing that Gleicher's claim against him was barred by the two-year statute of limitations applicable to legal malpractice claims. He argued that Gleicher knew or should have known of her injury when she received next to no proceeds from the 2016 sale of Somerset and yet failed to bring suit against him until 2022. The circuit court agreed and dismissed Gleicher's complaint. We affirm the circuit court's decision.

¶ 4    We do our best to summarize the salient factual allegations in Gleicher's complaint, although parts of it are difficult to follow. On March 13, 1997, Gleicher's parents, aunt, and uncle formed Somerset to hold an investment property located at 3064 Kishner Drive in Las Vegas, Nevada. They executed an operating agreement to reflect their ownership interest in Somerset shortly after it was formed.

¶ 5    In early 2012, Gleicher became the sole member of Somerset, and on May 13, 2012, she became its sole manager. That same day, Gleicher and her husband, Adam Klein, "purportedly executed an amended operating agreement relative to Somerset," but according to Gleicher, "that document did not exist" on that date and "thus could not have been executed on that date." At some point after May 13, 2012, "Klein asked [Gleicher] to re-type the Somerset Operating Agreement for the ostensible purpose of having her execute an amended operating agreement relative to Somerset to reflect her membership interest in the entity." Gleicher re-typed part of the Somerset Operating Agreement, and at some point after that, Klein completed it.

¶ 6    In 2015, Gleicher and Klein hired Pullman to provide legal services relating to Somerset. They did not sign a retainer agreement, and Pullman did not discuss potential conflicts in him representing both Gleicher and Klein, or have them sign conflict waivers with respect to his

representation. After he was retained, Pullman requested and received a copy of the Somerset operating agreement. In December 2015, Gleicher, Klein and Pullman met to discuss the estate plan and Somerset. Pullman knew at this time that Somerset was Gleicher's "sole inheritance," and that Klein "had no ownership or management interest in Somerset." This was the last meeting Gleicher was invited to attend with respect to Somerset until it was sold.

¶ 7     After their December 2015 meeting, Pullman "preferred the interests of" Klein over Gleicher and "took actions with respect to an amended operating agreement for Somerset and with respect to estate plans" for Gleicher and Klein. Specifically, Pullman worked with Klein to give him an interest in Somerset that he failed to discuss with Gleicher. Pullman added Section 6.21 to the Somerset operating agreement, "which did not exist in the original operating agreement," giving Klein the title of "sole manager for life." Gleicher never discussed making Klein sole manager for life, never authorized Pullman to add this provision, and never signed any documents granting Klein this title.

¶ 8     Somerset was sold in 2016 for approximately $6 million.

¶ 9     In late 2017, Klein convinced Gleicher that they needed to update their estate plans and they retained Pullman to do so. Klein instructed Pullman to prepare a trust that would allow Klein to "manage any operating companies and real property" owned by Gleicher's trust.

¶ 10     Pullman also prepared two documents titled "Membership Interest Assignment" regarding Gleicher's membership interest in Somerset. These documents indicated that Gleicher was to transfer her "supposed" 95 percent interest in Somerset to her trust and Klein was to transfer his "supposed" 5 percent in Somerset to his trust. However, Gleicher never assigned any part of her membership interest in Somerset to Klein, did not authorize this change, and did not sign the membership certificates because "neither membership certificate has a signature line."

¶ 11    In November of 2018, Gleicher initiated divorce proceedings against Klein. "It was during the pendency of [her divorce case with Klein], and during communications with her counsel during discovery in that matter, that [Gleicher] discovered that [Pullman] had assisted Klein in carrying out the taking of Somerset from [her]." Gleicher asserted that "the only mon[ey] [she] received from the sale of Somerset" was "court mandated support in the amount of $4,500.00 per month, which began in June of 2019 and ended in February of 2020."

¶ 12    On July 29, 2022, Pullman moved to dismiss Gleicher's complaint under section 2-619 of the Civil Practice Law. 735 ILCS 5/2-619 (West 2022). He argued that because Gleicher admitted that she "discovered that [he] had assisted [Klein] in carrying out the taking of Somerset from her" during the pendency of her divorce proceedings, her claim against him was time-barred under the two-year statute of limitations applicable to legal malpractice claims. He argued that "the appliable two-year limitations period commenced sometime between the commencement of the divorce proceedings in 2018 and the completion of 'mandated support' payments in February 2020[,]" and that under either date, Gleicher's complaint, which was filed on April 25, 2022, was time-barred as a matter of law, and must be dismissed.

¶ 13    Gleicher responded that Pullman's statute of limitations argument fails because there was a "factual dispute" as to when she discovered Pullman's allegedly negligent conduct. She asserted that she did not learn of Pullman's negligent conduct until June 22, 2021, when he was deposed by her divorce lawyer. To support her argument, Gleicher attached a transcript of Pullman's deposition testimony.

¶ 14    Pullman argued in reply that any reasonable person "in Gleicher's position must be deemed to have sufficient information to determine" she may have a cause of action when she only received $40,500 (in the form of spousal support payments) of the $6 million in proceeds

from the sale of Somerset. He argued that at a minimum, the two-year statute of limitations for Gleicher's legal malpractice claim began to accrue in February 2020, when she received her last spousal support payment.

¶ 15    After stating that the allegations in Gleicher's complaint led to "only one conclusion," the court granted Pullman's motion to dismiss, finding that Gleicher's claim was time-barred under 735 ILC 5/13-214.3(b) (West 2022). The court explained,

> "Gleicher was the sole member of Somerset. She never authorized Klein to have any membership interest. However, at the time Somerset was sold, Gleicher received none of the anticipated $6 million profit from the sale. Instead, Gleicher only received spousal maintenance payments from June 2019 to February 2020, totaling approximately $40,500. A reasonable person in Gleicher's position knew or should have known she had been injured, and that her injury was wrongfully caused, when she received less than one percent of the anticipated profits from the sale of an LLC of which she was the sole rightful owner. The fact that she did not know her injury had been wrongfully caused by Pullman does not prevent the limitations period from running."

The court found it "clear from the face of the Complaint that Gleicher knew of her injury as of February 2020 and knew or should have known the injury was wrongfully caused at that same time." Therefore, it concluded that the statute of limitations expired no later than February 2022, making her complaint untimely. Gleicher timely appealed.

¶ 16                                   II. ANALYSIS

¶ 17    We review section 2-619 dismissals *de novo*. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008). A section 2-619 motion to dismiss allows litigants to "dispose of issues of law and easily proved issues of fact at the outset of a case, reserving disputed questions of fact for

a jury trial." *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995). A motion to dismiss brought under section 2-619(a) "admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleadings which defeat the claim." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55.

¶ 18    Pullman's motion does not specifically identify the relevant subsection of section 2-619, but because the motion asserts that "Gleicher's complaint is barred by the statute of limitations," we construe it as one brought under section 2-619(a)(5), which provides for dismissal of an "action *** not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2022). By filing a section 2-619(a)(5) motion, the movant alleges the claim is stale because it was filed beyond the statute of limitations. See *id.*; *Porter*, 227 Ill. 2d at 352.

¶ 19    The defendant has the initial burden of proving the affirmative defense relied upon in his motion to dismiss. *Mayle v. Urban Realty Works, LLC,* 2022 IL App (1st) 210470, ¶ 42. Once a defendant meets his burden, it becomes incumbent upon the plaintiff to set forth facts sufficient to avoid the statutory limitation. *Brummel v. Grossman*, 2018 IL App (1st) 162540, ¶ 23.

¶ 20    The time at which the statute of limitations begins to accrue is "normally a question of fact, [but] a court may decide the issue as a matter of law where the facts are undisputed and only one conclusion may be drawn from them." *Id.* ¶ 26 (quoting *Trogi v. Diabri & Vicari, P.C.*, 362 Ill. App. 3d 93, 98 (1st Dist. 2005)). We, therefore, must determine "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Id.* ¶ 24 (quoting *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 178 (2007)). On review, appellate courts take as true all well-pleaded facts alleged in the complaint, and all reasonable inferences from the pleadings and other supporting documents are drawn in the plaintiff's favor. *Id.* ¶ 23.

¶ 21   The parties do not dispute that this action is subject to the limitations periods in section 214.3(b) of the Code of Civil Procedure, which states:

> "An action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services or (ii) against a non-attorney employee arising out of an act or omission in the course of his or her employment by an attorney to assist the attorney in performing professional services must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3 (b) (West 2022).

¶ 22   Section 214.3(b) expressly incorporates the discovery rule, "which delays commencement of the statute of limitations until the plaintiff knew or reasonably should have known of the injury and that it may have been wrongfully caused." *Janousek v. Katten Muchin Rosenman LLP*, 2015 IL App (1st) 142989, ¶ 13 (quoting *Dancor Int'l, Ltd. v. Friedman, Goldberg & Mintz*, 288 Ill. App. 3d 666, 672 (1997)). The statute of limitations begins to accrue when the purportedly injured party "has a reasonable belief that the injury was caused by wrongful conduct, thereby creating an obligation to inquire further on that issue." *Janousek*, 2015 IL App (1st) 142989, ¶ 13 (quoting *Dancor*, 288 Ill. App. 3d at 673). The plaintiff has the burden of proving the date of discovery when seeking to come within the "discovery" exception to the statute of limitations. *Blair v. Blondis*, 160 Ill. App. 3d 184, 188 (1987).

¶ 23   Our supreme court has clearly stated that the law does not require knowledge of "defendant's negligent conduct," meaning the law does not require a plaintiff to know who caused her injury for the statute of limitations to begin to run. See *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 170 (1981); see also *Bates v. Little Co. of Mary Hospital*, 108 Ill. App. 3d 137, 140

(1982) ("The term 'wrongfully caused' must be viewed as a general or generic term and not a term of art. It does not mean that the plaintiff must have knowledge of a specific defendant's negligent conduct."); *Guarantee Trust Life Insurance Co. v. Kribbs*, 2016 IL App (1st) 160672, ¶ 30 (rejecting plaintiff's argument that knowing the identity of the injuring party "is a prerequisite to the commencement of the running of the statute of limitations.") Instead, all that is required is sufficient information to put the plaintiff "on notice" of her injury and the fact that it may have been wrongfully caused. *Dancor,* 288 Ill. App. 3d at 675. Then, it is incumbent upon the plaintiff "to investigate and inquire further." *Id.*

¶ 24    Gleicher argues that she did not discover "that her injury was, in fact, wrongfully caused until" Pullman was deposed during her divorce proceedings in June 2021. However, as noted above, the statute of limitations begins to run when a plaintiff "knew or *reasonably should have known* of the injury and that it *may have been* wrongfully caused." *Janousek*, 2015 IL App (1st) 142989, ¶ 13 (emphasis added). Therefore, our analysis does not end once we determine when Gleicher actually knew that Pullman allegedly caused her injury; rather, we must determine when Gleicher reasonably should have known of her injury and that it may have been wrongfully caused. As we state above, a court may decide the issue as a matter of law where the facts are undisputed and only one conclusion may be drawn from them. *Brummel v. Grossman*, 2018 IL App (1st) 162540, ¶ 26.

¶ 25    *Brummel v. Grossman*, 2018 IL App (1st) 162540, is instructive. There, Maria Brummel sued several law firms as the executor of her deceased husband Bruce Brummel's estate for negligent representation in a worker's compensation case against Nicor Gas, Bruce's former employer. *Id.* ¶ 1. The trial court granted the defendant attorney's section 2-619(a)(5) motion to dismiss because the complaint was untimely, and this court affirmed. Bruce began working at

Nicor in 1980 and was terminated on April 15, 2004. *Id.* ¶¶ 3-5. During his decades-long career at Nicor, Bruce worked in various positions and earned an annual salary of over $100,000. *Id.* ¶ 5. In 2001, Bruce and other coworkers exhibited symptoms associated with toxic chemical ingestion, such as vomiting, diarrhea, and weakness. *Id.* ¶ 3. Bruce investigated the source of drinking water, and he found toxins contaminating the source due to the water boiler not having proper safeguards. *Id.* Bruce filed a worker's compensation claim in 2006, but it remained pending for five years before Nicor offered to settle for $125,000. *Id.* ¶¶ 7-8. The settlement offer did not contain any other benefits such as disability or compensation for medical expenses. *Id.* ¶ 27. Bruce accepted the settlement offer on October 20, 2011. *Id.* ¶ 8. Maria brought a legal malpractice claim on behalf of his estate on December 30, 2014. *Id*. ¶ 1.

¶ 26    This court held that the claim was time-barred. *Id*. ¶ 34. It found that Bruce's injury occurred when he accepted the settlement offer, because the settlement amount "was substantially less than what should have [been] received as reasonable compensation" considering that it "was less than 1 year of [Bruce's] previous Nicor salary" and was supposed to "compensate him for nearly 8 years of back pay and 28 years of future income and disability that he was claiming he was entitled to, including unpaid medical expenses." *Id.* at ¶ 28. The court reasoned that the statute of limitations began to run upon Bruce's acceptance of the settlement offer, because the settlement's "deficiency *** was obvious to even a lay person ***  just considering the bottom line." *Id.* at ¶ 33.

¶ 27    Similarly here, the facts in Gleicher's complaint support a finding that her claim is time-barred. Gleicher alleged that she had a 100 percent ownership interest in Somerset and admitted that Somerset was sold for approximately six million dollars in 2016. Based on these facts alone, Gleicher reasonably should have known that she was injured when she did not receive any

proceeds from the sale of Somerset in 2016. A reasonable person who failed to receive any proceeds from the sale of a six-million-dollar company she claimed to own 100% of, directly or indirectly, would be on notice to inquire about her injury and its possible cause. Therefore, the two-year statute of limitations arguably began to accrue in 2016 when Somerset sold for $6 million and Gleicher received none of the proceeds.

¶ 28     In any case, we agree with Pullman and the trial court that at a minimum, Gleicher reasonably should have known of her injury in February 2020 when her "[spousal] maintenance ended[.]" According to Gleicher's complaint, she received approximately $40,500 in court mandated spousal support, and that sum was "[t]he only monies [she] received from the sale" of Somerset. As the trial court noted, this was "less than one percent of the anticipated profits from the sale." The complaint does not explain how the spousal support payments relate to the proceeds from the sale of Somerset, but if we accept Gleicher's allegations at face value, including that she was the sole inheritor of Somerset and that the spousal support payments represent the funds received from its sale, she reasonably should have known of her injury in February 2020, when her maintenance payments ceased and she received nothing close to the amount she should have after Somerset was sold. At that point, Gleicher should have had a "reasonable belief that the injury was caused by wrongful conduct, thereby creating an obligation to inquire further on that issue." *Janousek*, 2015 IL App (1st) 142989, ¶ 13.

¶ 29     Gleicher argues that she did not know Pullman himself specifically caused her wrongful injury until she took his deposition on June 22, 2021, and therefore the statute of limitations did not begin to run until that date under the discovery rule. Gleicher's argument is flawed, however, because our supreme court has rejected the notion that "a cause of action accrues when a person knows or should know of both the injury and the defendants' negligent conduct." *Nolan*, 85 Ill. 2d

at 170. "The phrase 'wrongfully caused' does not mean knowledge of a *specific* defendant's negligent conduct or knowledge of the existence of a cause of action." *Castello v. Kalis*, 352 Ill. App. 3d 736, 744 (2004) (emphasis added). Instead, the discovery rule holds that the statutory period begins to accrue when a plaintiff reasonably *should know of her injury*. 735 ILCS 5/13-214.3 (b) (West 2022) (emphasis added). This standard has been interpreted to mean that the statute of limitations will begin to run when an individual has a "reasonable belief" her injury was wrongfully caused. See *Dancor*, 288 Ill. App. 3d at 673. We find that a reasonable person in Gleicher's position should have known of her injury and suspected that it was wrongly caused no later than February 2020, the date that Gleicher alleges she received her final support payment, the same support payments she alleges were "[t]he only monies [she] received from the sale" of Somerset.

¶ 30    Even if we were to accept Gleicher's position that the statute of limitations does not begin to accrue until the injured party knows the identity of the specific person who wrongfully caused the injury, Gleicher fails to point to any testimony in Pullman's deposition that she did not already know or suspect after receiving next to nothing from the sale of Somerset. In addition, she fails to identify when Pullman's alleged assistance in "carrying out the taking of Somerset" took place, and instead merely asserts that "[i]t was during the pendency of that [divorce] matter *** that [she] discovered that [Pullman] had assisted Mr. Klein in carrying out the taking of Somerset from [her]." Gleicher had the burden to set "forth sufficient facts to avoid the statutory limitation" when seeking to come within the discovery exception to the statute of limitations (*Blair*, 160 Ill. App. 3d at 188), but she failed to do so here.

¶ 31    Gleicher argues that *Van Meter v. Darien Park District*, 207 Ill. 2d 359 (2003), supports her position that Pullman's deposition testimony establishes the June 2021 discovery date, but *Van*

11

*Meter* did not involve a statute of limitations issue and is distinguishable on its facts. In *Van Meter*, plaintiff homeowners brought a negligence action against the Darien Park District, the city of Darien, and other defendants, alleging that defendants' construction of a municipal recreation area adjacent to their residence caused their home to flood. *Id.*at 362. Defendants moved to dismiss, asserting that they were immune from liability under the Local Governmental and Governmental Employees Tort Immunity Act. *Id.* at 364-65. After the trial court granted defendants' motion to dismiss and this court affirmed, plaintiffs appealed to our supreme court, arguing that the "affirmative matter" asserted by the defendants was not apparent on the face of the complaint. *Id.* at 377. The court noted that to be immune from tort liability, the defendants were required to show that "the plaintiff's injury result[ed] from an act performed or omitted by the public entity in determining policy *and* exercising discretion." *Id.* at 373 (emphasis in original). The Court held that that it was not "apparent on the face of the complaint" that defendants' "actions and omissions were the result of a policy decision." *Id.* Additionally, the defendants failed to establish that their actions or omissions were discretionary as required by the statute. *Id.* at 380. Because the nature of the defendants' acts and omissions were not apparent on the face of the complaint or supported by affidavits or other evidentiary materials, the court found that the defendants failed to satisfy either element of their immunity defense. *Id.*

¶ 32    Here, by contrast, Pullman's motion to dismiss noted that Gleicher "unequivocally acknowledge[d] that she first 'discovered' the alleged negligent conduct [of Pullman] during the course of a divorce proceeding in 2018." Pullman's motion went on to note that Gleicher "allege[d] that the harm which she claims to have suffered as a result of the sale of Somerset began in June 2019 and was fully realized in February 2020[]" when she received her last spousal support payments. Thus, based solely on the allegations in Gleicher's complaint, Pullman argued—and we

are able to conclude—that Gleicher should have known of her injury no later than February 2020, when her spousal support payments, which came from the proceeds of the sale of Somerset, terminated and the amount of money she received was nowhere near the amount she was entitled to from its sale. Accordingly, the circuit court correctly determined that Gleicher's legal malpractice claim was time-barred.

¶ 33                                    III. CONCLUSION

¶ 34    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 35    Affirmed.